and Mariette B. Joachin, okay. We'll hear first from Mr. Moss. You have 15 minutes and then tell everybody. Thank you. And may it please the court. This is a story about a family and their new home. Now, many of us here today have purchased a home and we understand the particular challenges of that process. The Joachins, the family we're here to talk about today, they're no different. Well, maybe a little bit different, but that's only because the Joachins' first language is French. And the complicated paperwork, and especially the insurance paperwork involved in buying a new home would be especially foreign to people who speak English only as a second language. Now, the Joachins purchased their new home at a foreclosure sale in April of 2018. It was April 3rd, 2018. Like most used homes, the Joachins' new home needed a little bit of work. Now, we're not talking about a total renovation or gutting the property or anything so severe, but it needed some minor repairs. Now, before the Joachins complete their repair sale, they visited their insurance agent to get the property insured. That was on April 11th, 2018. The Joachins relied extensively on their insurance agent to assist them in filling out their insurance application and to apply for the correct insurance policy, especially considering the language barrier they had. The Joachins' agent secured for them a GeoVera homeowner's insurance policy on that same day. And at that time, the Joachins believed that their property was covered against losses such as fire. Now, over the next few weeks, the Joachins started making the repairs to the property. They were getting it ready to finally move in. But unfortunately, at that point, an electrical fire badly damaged the property. Now, that was on May 9th, 2018. And that was that they were not living in the property at all times, or when did they become aware of that, and did they continue to accept payments of the premiums after that time? And have those been remitted in any lawsuit? Yes, Your Honor. As far as I understand, the Joachins continue to pay their premiums throughout this process through the fire, right? And I don't know that GeoVera ever specifically asked if they had moved into the property yet at any point before this fire, but it was certainly clear the Joachins intended it to be their residence. I'm asking about the premiums. Have the premiums been returned? If the contract never could exist, because there was never, at the formation of the contract, under the opposing counsel's version of the contract, the qualification that needed to happen never existed. They did not, it wasn't their residence at the time. But they accepted payments, and they would need to return those premiums because the contract was never formed properly. Yes, Your Honor, I understand your compensation for their insurance premiums. Okay, I'll ask the opposing counsel in his time. So, you continue with your argument. Go ahead. Thank you. All right. So, at this point after the fire, the Joachins did exactly what you would expect. They contacted GeoVera. They reported their loss. But instead of GeoVera coming out and compensating for their damage, they started giving them excuse after excuse after excuse as to why GeoVera shouldn't have to pay for the loss. Now, we're here today to talk about only one of those excuses, and that's because GeoVera claims that the Joachins insurance policy didn't provide coverage for the loss because they didn't move into the property on the very same day that they purchased that policy. Now, I'm not talking about they never moved into the property at all. I'm saying they didn't move in on the day that they purchased the policy. So, before we even get into the legal aspects of this argument... The case law, but factually your clients never moved in before the fire, right? They intended the home to be their residence. I get that, but they actually never resided there before the fire. So, it's not a case where they moved in on day two, lived there for three months, the fire happens, and the insurance company is saying, well, you weren't there on the inception date. Tough luck. Your client never resided there. That's correct. I'll get... I know they intended to. Okay. They took possession of the property, didn't they? Yes, your honor. And they had to do some alterations or repairs? Yes, your honor. They certainly... They were doing those themselves or with a contractor? They were making the repairs themselves, your honor. I don't know what the policy says exactly, but could it be read to mean if you take possession and you're treating that property as your own, that you're residing there? I would certainly hope so, your honor. When I saw you recovered $150,000 from the agent, I take it that's because the agent gave you the wrong policy, which I guess that theory is somewhat inconsistent with what you're telling us here. But how would that work? If you were to get a reversal here, would that be credited against any recovery or would that just be extra money? How would that work? Yes, your honor. So right now, the damages are completely separate. So the damage that my client is seeking from G of Air are contractual damages and bad faith damages. These are damages that are owed under a contract. The damages that my client has sought against his insurance agent or their insurance agent was for negligence. And that wasn't necessarily just because they secured the wrong policy. There was quite a few things that that agent had done wrong. And I don't think that there would be any kind of balancing that needs to be done here because we have completely separate causes of action and we have completely separate parties. Same injury though. But so that case settled against the agent and it settled. There was no trial or anything, right? It did settle, your honor. But I'd like to carry this just like a step further regarding what this means, the practical application of this first day of inception rule, right? So and I can tell you that I bought a home myself a few years ago and it took me a few weeks to move into that property. Before I was sleeping there, before I was getting mail there. In fact, it's even longer before I got mail there because they had a weird mailbox system. But according to Gia Bear's argument, if my house burned down today, if I had that policy, I wouldn't be covered because I didn't reside at the home on the date the policy incepted, which is just an absurd consequence, your honors. And I expect, I'm sorry, I suspect that most people would be in the same boat, right? Now, and what about the people? Assuming we agree with you as a practical matter that this seems absurd or difficult, how do we legally get there? We don't just go roving, give rough justice to people. We have to have, it has to be based upon the contract or under some legal principle that reforms the contract or what's your legal principle? Right. Thank you, your honor. So I think really what district court did here was they said that my clients could not prove coverage. Therefore, Gia Bear didn't have to assert any kind of policy exclusions regarding coverage, but that's simply not true. I actually have here some language from the case of a bail v. Allstate from this court, which says that under Louisiana law, the insured must prove coverage under the insurance policy. That is the insured must carry the burden of persuasion to or under compensated damage was caused by a covered peril. Then if the defendant insurer wishes to avoid liability by relying on a policy exclusion from coverage, it has the burden to establish that an uncompensated or undercompensated damage is subject to an exclusion. Now, according to this language, the walk-ins only needed to have established that their home was damaged by a covered peril to prove, uh, to prove coverage. Okay. And they certainly did that when they made that call to Gia Vera, they said my home was damaged by fire. That home is a policy is the property that's listed on that policy is the policy they sought insurance for. And far as certainly a covered peril. So Gia Vera then needed to, uh, to assert some kind of policy defense, right? An exclusion. And that's what they did. They asserted the policy was vacant. Now they're trying to do this in a roundabout way, but that is their argument. Their argument is the policy was not occupied on the day that walk-ins purchased the policy. And I think that's how they say that the, that the, um, policy was not in existence, that it should be, um, rescinded and declared void because it never was, um, consummated. Well, I think your honor, we just have to disagree with that. And that's because clearly the walk-ins purchased the policy. They're paying premiums on the policy. Uh, inception date is clearly listed on the policy. So the policy was incepted. So to say that it's void for some kind of misrepresentation is simply not true. Not only did the walk-ins not make any misrepresentation, but they certainly bought a homeowner's policy for their home. They just hadn't had a chance to move into it yet. So you dispute that it's some sort of condition precedent to the formation of the con to the contract that they are living in the property. Absolutely. Your honor. I mean, we can look at cases here from, uh, Thomas V industrial fire, where we have a property that was, uh, was damaged by a fire and a very similar argument was made. And what happened was the court said, well, you know what the vacancy provision that's allowed in insurance contracts, right. Is that starts to run from the day the policy is purchased. And here that would allow our clients a minimum of 30 days, according to the policy, but really in actuality, 60 days, because Louisiana law has been, uh, uh, very clear that an insurer has 60 days, uh, before their insurance company can exclude coverage for throughout earlier. I agree. It is very troubling that under the language of this policy, someone moves in on day two and a fire happens 10 months later, they're not covered. I mean, that's, that's very problematic to me, but it is fairly common. There's a lot of cases in the case that we had one in our court a couple of months ago that just has a residency requirements and that wasn't met here. So if we think it's absurd as to the hypothetical you pose, but if we think just having a general residency requirement is actually fairly standard and not absurd, how, how do we reconcile that? Okay. So we reconcile that in a couple of ways. Uh, first off the general residency requirement would still allow for periods of vacancy, right? That is by statute incorporated into every insurance policy or every homeowner's insurance policy, uh, by way of the standard fire policy. But assume it's, that's an exclusion. I know you don't argue that, but that you don't even get there if it's, there's not a residency condition, right? But you would still have a certain amount of days that the policy can be unoccupied. And in this case, in none of the cases that were cited in Louisiana, uh, by my opposing counsel had the property being occupied within the 60 days leading up to the loss. I think he might've cited one that was applying law from a different state, but that's just not applicable here. So what we have here is a case where my client purchased a property and they were certainly, uh, purchasing it for the purpose of residence. All right. There was no misrepresentation about that. Okay. They had a certain right to leave that property unoccupied while they were getting ready to move into it. And that's expressly written down in the contract. They're allowed 30 days for the vacancy, right? That way they can get themselves ready and get into the property. So I mean, I think the real issue here is that my clients have proved coverage. They proved it whenever they demonstrated the loss was covered and the property was the insured property. They purchased the property for the purpose of residence. And before they had a chance to move in the house burned down and G of error is denying coverage because they didn't live there on the very day they purchased the policy. If nothing else, this policy is absolutely, uh, egregious. Uh, and that it would disallow people from collecting insurance proceeds where they certainly right. And they rightly should have them. Um, are you finished with tomorrow? Sorry. Thank you. Uh, sorry. I had a nice scenario written out in my head and, uh, it's been a little derailed, but, um, I will say that, uh, this court has considered proving, uh, insurance coverage already. Uh, they did that in the bail case that already described, uh, other courts have considered the vacancy issue such as Thomas. And I've also described that. Uh, I think these two things are go hand in hand together, right? Uh, you cannot have, uh, you cannot have an issue where a client can't prove residency where they were buying the house for their residents. I mean, the cases that my opponent was, was relying on are cases where, uh, for example, cases where a, they paid for coverage, like the, uh, cobble case, uh, they paid for coverage for the structure, but then the issue of residency only came into question whenever it was additional living expenses. And certainly you would expect, uh, an issue of residents to be there for additional living expenses. And I see that my time has expired. Okay. Thank you, sir. Mr. Schmickle, am I pronouncing that correctly? Mr. Schmickle, your honor. Thank you, sir. Well, your honor, Seth Schmickle on behalf of Juvera, we, uh, request the court to affirm the district court rulings, uh, granting my client's declaration for affirmative relief that there is no coverage and dismissing the counterclaims for coverage and bad faith against this. Uh, I certainly understand the court's difficulties with potential absurd results. There is really no, let me ask, there's a lot of cases I've seen and parties, you both sides cite to some that just have a residency requirement. Those are common. I have not been able to find a case that has this residency has to be on the inception date. Are you, are you aware of any that's interpreted this provision? Not offhand, not offhand, your honor. I don't believe so, but maybe because my client is surplus lines and shirts. So they have more flexibility in policy when paired with folks to not get traditional policy from more common carriers, they have more flexibility. And this is the contract that comes though, there may be some harsher terms here, but to your earlier point, there is no absurd result here because if you're just switching policies, let's say for example, you're hired to pay state farm premiums or whoever you have, you call your agent. You've had like five new quotes from different carriers. One of them is geo-variant pumped in and you could find this policy creates no problem there. You're already there. And those are the, you know, this is what you've ever intentionally not seeking to provide coverage for or make it home. And so the language does operate successfully in certain very other situations. It does not work here. It should not have been procured here by the insurance agent. And I strongly suspect that by Mr. Moss is able to recover $150,000 from the insurance. What about his hypothetical? I mean, let's say I was going to buy a house, move in on June 1st, get the policy ahead of time, because of course, I don't want a day without coverage, right? So I call a week or two ahead of time, inception date, June 1, because that's when I'm moving in. Well, a couple of days beforehand, my mover calls and says, oh, we've got a problem. We're not going to be able to move you in until June 2nd. And so I move in a day late. And then 10 months later, a fire happens. I mean, under the plain terms of the policy, I'm not covered. I was not a resident on the inception date. Right. And I think your issue, I would refer you to the agent who should have never got you the policy. They should be getting you a policy, like in a situation where you're changing carriers in your current home from one to the other. I think your issue, while the court may be struggling with the language, which is clear and unambiguous, it says what it says. It's problematic. It's supposed to be enforced as written, problematic to this particular homeowner, but it's problematic because their agent got them the wrong policy. Again, this works just fine in a number of other scenarios, and you're just switching carriers from one to the other. And in this particular instance, your hypothet, Your Honor, is troublesome. But that same hypothet would again exist in the Korbel decision. You still will have that same residency requirement, although you won't have it be accepted in the policy. And I suggest, though, that this court is bound by the prior precedent rules to follow Korbel and give the same definition of reside that it gave in that definition. And there is no ambiguity. It says reside at the time the policy is set. And so just... Is it your position that you can accept premiums for years and then declare that the policy never came into being? You've never... No, Your Honor, we have a dispute. The appellants contend there is coverage. Should they be right and be entitled to premiums, I am certainly authorized on my side to tell you upon the entry of a final and non-appealable judgment, finding there is no coverage, they do intend to initiate the rescission process. And we actually did move for that ground in one of these counts, but that was no longer needed upon the entry of the final judgment here. Okay. Can you ratify by accepting payments that you've accepted a modification of the terms by accepting... In the hypothetical by Judge Koster, imagine a 20-year person living in the accepting payments where there was this defect at the exception. Is there ever a point at which you have ratified the contract as it is? Well, no, Your Honor, to your point, if there's been 20 years, there's been renewals of that policy. Okay. One year, is it an annual? So 10 months is the most we can do, 10 or 11 months, and Judge Koster, hypo? I think mathematically that may be accurate. What? I think that may be accurate mathematically. Okay. So 11 months into it, you've not ratified even if you come into knowledge that they didn't live in it and you continue to accept the payments? No, Your Honor. I believe ratification has not been the subject of any motion before this court. I don't believe it's proper to really discuss that. But no, I think the issue here is we have a dispute on whether the policy exists or not. That's from the get-go. The claim came in. That was the first time they learned about this was during the examinations under note, and they immediately issued a denial and then followed up with this declaratory judgment to declare, we don't think there's a policy. We don't think there's coverage. The appellants disagreed. So the fact of this case would never support ratification because as soon as they first learned of it, they began seeking the declarations and the rights of the policy. Thank you. Do you agree that if the 30-day vacancy applied and could be used for residency, that you would lose? If the vacancy exclusion could operate and create coverage when there was none? Well, no, Your Honor, because also- So you're arguing though that the vacancy can be at the first 30 days and that you're still a resident. Kind of work it out that, assuming that you intend to live there, but you're applying the vacancy thing to give you a 30-day window. Well- If that were to happen, 30 days is met here, right? You don't need to go through whether or not the 60 days applies or not. No, because it was 36 days this place was vacant. We've established that. They bought the property on April the 3rd and the fire happened on May 9th. My policy vacancy exclusion does not tie it to 30 days from after you purchase the policy. It says 30 days vacant. This thing has been vacant for at least 36 days, based on the facts of this case. So we have to apply the vacancy even before they purchase the policy? If you're going to look at my policy, yes. The vacancy exclusion does not trigger off the date of the inception of the policy. Okay. Continuing on, Your Honor, I think there are a number of issues. I think this latest argument that it just shows up and covered was proven because it's on the debt sheet. It was never made below. I think that argument's been waived and it's not proper. Regardless, even if it's considered, I think the facts show that they did not reside. Again, I stress the of this policy is very clear and unambiguous. It says what it says. It was not the right policy that should have been procured for these people. There are no certain circumstances. I don't believe the fire statute applies at all 22, 13, 11, 23, 12, 11, and I'm messing up my number. Does that apply? We've seen that the Louisiana Supreme Court in both Taranto and Landry calling its application is inapplicable. In 2014, you saw the legislature come in and amend what is now 22, 13, 18, which prior to 2014 only applied to fire policies. They came in 2014 and amended that statute to extend it to all policies of insurance. No such amendment to this statute, 22, 13, 11, was extended. It is still narrowly and it only applies to fire policies. And Louisiana statute 22, 6 specifically delineates the difference between a fire policy and a homeowner's policy, and this is a homeowner's policy. So I don't think you ever get to the question of the 60-day exclusion. Further, I also think that argument is waived because they've never taken on the district court's holding that the fire statute 22, 13, 11 is inapplicable. It's very in a footnote of a brief. It's footnote 33 on page 17. And this court has said in Arbuckle that you cannot subordinate arguments to footnotes. They've been waived if you do that. So I think that argument should not be considered. For all of these reasons, I really respectfully request the court uphold this plain language of this contract. It says what it says. It needs to know if there's consequences when it's procured by an agent for the right type of home. I just want to follow up on that. You shouldn't have been the policy for these plaintiffs because it was a new home that they weren't ready to move in. I mean, you're saying this is one that should only be for someone who's already in the home. There's so much lingo in the insurance industry. Is there sort of different names for these different types of policies? There is, Your Honor, something on the market called vacant home insurance, which is geared at homes under construction that you first buy. The premium on that is fairly high because carriers, actuaries do not really want to be insuring vacant homes. But there is a product on the market that does it. What's my understanding is vacancy exclusion statutory is largely because, I mean, it's not all for homeowners. It's partly for insurers because of that, after a certain amount of time, insurers don't want to be on the hook for vacant property because the risk of fire is greater when you have vacant property, vacant homes. Absolutely. And that's what comes from 221311, which the burden of that is fire policy. That's how the insurance industry first began, was fire policy, which is where our statute. The market has changed, grown, and broadened. That statute really isn't applicable to the current product being sold here. Now they sell fire, wind, and provide a lot more coverage than you're outside of that particular statute. But the principle is still the same. I do not believe actuaries are interested in insuring vacant homes for very long. Your Honor, Justice Dennis, I understood you asked earlier, what does it mean if they took possession? Again, I don't believe the contract says possession is sufficient enough. It clearly says reside on the date of inception. There's no mention of possession. The language is not ambiguous, so I don't believe that's an avenue under which the appellants can seek coverage. I think I've made all the points that I have to make, which is respectfully request the court supply Louisiana law regarding the plain language application. Corbell, which already, the prior decision is paneled, finding what the definition of reside means, and uphold and affirm the district court's rules. Thank you, Mr. Sperling. Mr. Moss, you have about five minutes on the clock. Thank you, Your Honor. First, I'd just like to address Corbell quickly. Corbell was a case where a claimant made an insurance claim. The insurance company paid on his house, paid on his contents, and after he filed suit later saying that they didn't pay enough, they only raised the issue of residency with regard to a very narrow aspect of his recovery, and that was for additional living expenses. Now, it makes perfect sense that you would want to see residence for additional living expenses because the whole purpose of additional living expenses is you have to be relocated somewhere else, or you have expenses because you can no longer live in the place that you were living before, right? So I think Corbell is completely unique and very different, in fact, from this case, and I don't think we should be applying the standards for residency. It's not just about possessions in the house. Vacant property has a much greater fire risk, and in particular, arson is a much greater risk with vacant buildings, certainly with commercial real estate. Absolutely, Your Honor, and I wanted to bring up that point, too. So in this particular case, this was an electrical fire that happened to the house that had absolutely nothing to do with whether or not the Joaquins were there at that time. The electrical fire ignited in the home, burned it down. This was not arson. This was nothing that had to do with the Joaquins not being home. This was going to happen, and luckily, they weren't there because they could have been seriously injured in this fire, of course. So that was one of the points I did want to make, right? So even if vacancy was a concern for the insurance company, it had absolutely nothing to do with the fire here, okay? So it didn't increase the risk, is essentially what I'm trying to say. Now, Mr. Schmeichel was addressing the standard fire policy provisions. Now, in Grice v. Aetna, the Louisiana Supreme Court clearly stated that the provisions of the standard fire policy, including that 60-day vacancy requirement, are included in all homeowners' policies in Louisiana, okay? So for whatever other reasons we may be trying to differentiate these kinds of policies, for the purposes of the vacancy exclusion, they have the same language. By statute, they have the same language, okay? And that was one of the big considerations here. Now, Mr. Schmeichel also made the argument that this property may have been vacant prior to the inception date of the policy. Again, because the standard fire policy allows my clients 60 days of vacancy, they have not exceeded those dates, okay? Okay. Are you finished? Do you want to submit the case, or do you have more to say? You have two minutes. Well, I'd like to address a couple more things real quick. So Mr. Schmeichel was also addressing that we made this provide coverage argument for the first time, and I hear in the appellate level, but that's simply not true. My client made the claim with Giavera asserting that the fire was a covered loss, because it was, all right, for the policy, which was insured and listed as insured on the policy. This argument was made since this claim was made. This is not a new argument. This is not something that we're trying to bury in briefs, and the same thing can be said for the 22-13-11, the standard fire policy language. This is something we briefed extensively. This isn't something that we were trying to hide. We're not trying to play hide the ball here. I think we laid it all out on the table. My client clearly proved coverage. They pointed to an insurance policy that listed the property as insured. They pointed to the policy provision that said fire is an insured loss. They wanted to move into that property. They bought it to live in. They just hadn't had a chance to move in yet, and before they could, the fire burned down. They lost their entire investment, and now Giavera is trying to deprive them of any recovery for that, and frankly, I mean, this just goes to demonstrate Giavera's bad faith, but that's... In my opinion, your honors, the contract was clearly breached. The contract certainly existed, and Giavera is liable to my clients for the recovery of the damages caused to their property and for bad faith damages under Louisiana law. Thank you. Thank you, Mr. Morris. The case will be submitted, and this panel will recess until 1 p.m. tomorrow.